UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

JANET F.[1],                          )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )          CIVIL NO.  4:19cv61
                                      )
ANDREW M. SAUL,                       )
Commissioner of Social Security,      )
                                      )
          Defendant.                  )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for SSI must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

    1.        The claimant last met the insured status requirements of the Social Security Act

on December 31, 2017.

2.     The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 10, 2012 through her date last insured of December 31, 2017 (20 CFR 404.1571 *et seq*.).

3.     Through the date last insured, the claimant had the following severe impairments; congestive heart failure, chronic obstructive pulmonary disorder (COPD), osteoarthritis and sleep apnea (20 CFR 404.1520(c)).

4.     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) as the claimant was able to stand and/or walk for two hours in an eight hour workday and sit for six hours in an eight hour workday, except: the claimant was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, needed to alternate between sitting and standing for 10 minutes every hour while remaining on task and at the workstation, was unable to climb ladders, ropes or scaffolds, could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl or reach overhead with the bilateral upper extremities, could frequently handle, finger and feel or reach in all other directions with the bilateral upper extremities and needed to avoid concentrated exposure to extreme humidity and vibration and loud noise and moderate exposure to pulmonary irritants such as dust, fumes and gases and extreme temperatures. In addition, the claimant required work that was free of fast production pace and quotas.

6.     Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on February 7, 1974 and was 43 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10.	Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.	The claimant was not under a disability, as defined in the Social Security Act, at any time from August 10, 2012, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g)).

(Tr. 12- 22 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff  filed her opening brief on December 13, 2019.  On January 24, 2020 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on February 21, 2020. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff filed her applications for benefits on December 8, 2014, alleging disability beginning August 10, 2012 (Tr. 163-64). On behalf of SSA, the state disability determination service denied Plaintiff's applications initially and upon reconsideration (Tr. 65-85, 88-96, 98-104). On July 11, 2017, an SSA administrative law judge (ALJ) conducted a video hearing where Plaintiff appeared and testified (Tr. 37-64). She was represented by attorney Dale Starkes (Tr. 122). On May 17, 2018, ALJ Romona Scales issued a decision finding Plaintiff was not disabled as defined in the Social Security Act (Tr. 7-28).

In support of remand, Plaintiff asserts that she is unable to work due to the combined effects of multiple medical conditions that prevent her from consistently performing certain exertional and nonexertional tasks and from sustaining activity for adequate periods of time to perform a job to an employer's satisfaction. She is diagnosed with congestive heart failure (CHF), chronic obstructive pulmonary disease (COPD), obstructive sleep apnea (OSA), chronic sinusitis and allergies, migraines/chronic sinus headaches, obesity, and arthritis (Tr. 180, 190, 580). Her symptoms include headaches with nausea and sensitivity to light, sound, and smells; lightheadedness/dizziness; fatigue and tiredness; difficulty sleeping/nonrestorative sleep; edema; joint pain; and shortness of breath (Tr. 51-56,190, 202, 207, 235, 238, 293, 309-16, 331, 357, 403-04, 407-10, 459, 462, 489, 491, 502, 562-71, 577, 579, 583, 597, 632, 658). Pain, swelling, and other symptoms worsen "over the course of the day". Due to swelling in her lower extremities, Plaintiff must frequently elevate her legs (Tr. 54-58). The swelling in her hands

prevents her from wearing her wedding ring, and her options for pain relief are limited by her

heart condition (Tr. 55-58). Although she continues trying to care for her family and home,

Plaintiff reported that at times, her medical conditions made it difficult for her to do such brief

and routine tasks as "even going to the store or cleaning house" (Tr. 56-58, 211).

Plaintiff states that she had a solid work history prior to becoming disabled. She last

worked in August 2012, and she held the same factory job for over 12 years (Tr. 46). The factory

where she worked produced microwave popcorn, and Plaintiff's doctors commented that

exposure to occupational irritants contributed to her respiratory disease (Tr. 500-01, 577). She

was terminated from her factory job when she could no longer tolerate the physical demands of

the job (Tr. 47). She collected unemployment for a time, but she stopped receiving unemployment

benefits when she responded to a question from the unemployment agency asking whether, due to

"health issues," she "could have honestly have worked if [she] had received job" (Tr. 51). She

testified that she "answered honestly and [said] no I could not have so I was not able to receive

the benefits so I was no longer able to collect unemployment" (Tr. 51).

Plaintiff argues that the ALJ failed to properly evaluate her symptoms and limitations. On

this appeal, the ALJ's symptoms evaluation is reviewed for legal error and will be reversed if,

overall, the ALJ's factual conclusions are "patently wrong."  *Cullinan v. Berryhill*, 878 F.3d 598,

604 (7th Cir. 2017); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ's

assessment is "patently wrong" when the findings lack adequate explanation or are not

"competently" explained, are not supported by substantial evidence from the record as a whole, or

are otherwise factually or logically mistaken. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir.

2006); *see also Cullinan*, 878 F.3d at 604 (credibility determination lacks support when it relies

on inferences that are not logically based on specific findings and evidence); 42 U.S.C. § 405(g) (findings of fact conclusive when supported by substantial evidence); 20 C.F.R. 404.1529; SSR 16-3p. Plaintiff argues that the ALJ's assessment of Plaintiff's symptoms and limitations is patently wrong because the ALJ did not apply the correct legal standard to the overall analysis nor did she weigh the evidentiary factors in a manner consistent with SSA's enunciated policies and precedential legal authority.

Social Security policy recognizes the importance of an individual's description of her symptoms and limitations in formulating residual functional capacity (RFC) and making the disability determination. *See* Social Security Ruling (SSR) 96-8p ("Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone."); SSR 16-3p ("Symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. …[A] report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms."). Accordingly, the ALJ's evaluation of the individual's symptoms and limitations is integral to the ultimate disability determination. *Little v. Astrue*, CASE NO.: 3:12-CV-352-TLS, at *14 (N.D. Ind. Jun. 12, 2013) ("[T]he assessment of the claimant's ability to work depends, at least in part, on the credibility of the claimant's testimony regarding the intensity of her symptoms.") (citing *Bjornson v. Astrue*, 671 F.3d 640, 646 (7th Cir.2012); *see also Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011) ("RFC determinations are inherently intertwined with matters of credibility."). Because the ALJ's findings about symptoms and limitations are likely to determine the outcome of the claim,

the ALJ must support her conclusions with specific, legally sufficient reasons supported by substantial evidence explained well enough for a reviewing court to conduct a thorough review. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 16-3p.

Plaintiff contends that the ALJ's assessment of Plaintiff's symptoms and limitations is patently wrong and lacks substantial evidentiary support for several reasons. First, Plaintiff claims that the ALJ failed to consider all of Plaintiff's medical conditions. The ALJ also insisted that, to be believed, Plaintiff's description of her symptoms and limitations be "entirely consistent with the medical and other evidence" - which Plaintiff points out is not the correct legal standard (Tr. 15). Plaintiff further claims that the ALJ also violated SSA policy that requires ALJs to give specific reasons for the weight given to the individual's symptoms which are "consistent with and supported by the evidence" and "clearly articulated" to permit "the individual and any subsequent reviewer" to "assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. In the present case, instead of weighing the evidence for and against a finding of disability, the ALJ merely listed facts and factors facially supporting her conclusion, but she did not explain how the facts led to the conclusion or why she disregarded evidence supporting an opposite conclusion. The ALJ also failed to give logical explanations for how the evidence led to her conclusions. This court agrees with Plaintiff that the ALJ's misapplication of the standards applicable to evaluating evidence of disability and her failure to fully consider the evidence requires remand.

The ALJ disbelieved Plaintiff's description of her symptoms and limitations because they were "not entirely consistent" with the record (Tr. 15). However, the regulations explain, "[A]ny symptom-related functional limitations and restrictions which you . . . report, which can

reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account." 20 C.F.R. § 404.1529(c)(3). The next section of the regulation confirms, "Your symptoms . . . will be determined to diminish your capacity for basic work activities to the extent [they] can reasonably be accepted as consistent with the . . . evidence." 20 C.F.R. § 404.1529(c)(4). The regulation even explains why such deference is given to an individual's description – "Because symptoms, such as pain, are subjective and difficult to quantify." 20 C.F.R. § 404.1529(c)(3). Thus, when the ALJ insisted on entire consistency, she was applying a different and incorrect standard to the evaluation of Plaintiff's statements than the "reasonable" standard described in the regulations. *Farley v. Berryhill*, 314 F.Supp.3d 941, 946 (N.D. Ill. 2018)(remanding because ALJ's use of "not entirely consistent" standard was too rigorous and did not align with the appropriate "reasonably accepted as consistent" standard"); *Bancolita v. Berryhill*, 2018 WL 2731227 *4 (N.D. Ill. Jun. 7, 2018). The distinction is critical because if Plaintiff's symptoms and limitations were reasonably consistent with the evidence in the record, her statements are evidence the ALJ was required to use in determining her "capacity for basic work activities," *i.e.*, her RFC. *Id.*

Additionally, the ALJ was required to weigh the evidence and determine whether Plaintiff proved her case by a preponderance of the evidence., but she did not do so. *See* 20 C.F.R. § 404.953; *see also, Minger v. Berryhill*, 307 F. Supp.3d 865, 872 (N.D. Ill. 2018). The ALJ did not analyze whether Plaintiff met her burden of proof, and instead, the decision appears to describe reasons weighing only "for" the ALJ's (boilerplate) finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in

this decision" (Tr. 15-20). The decision does not identify evidence supporting Plaintiff's symptoms and limitations, and it does not explain why the evidence weighing in favor of disability is less persuasive than the evidence the ALJ chose to rely upon. This approach is error. *Justin H. v. Berryhill*, CIVIL NO. 2:18cv383, at *29 (N.D. Ind. Jun. 7, 2019) (error where ALJ did not evaluate testimony in accord with "more likely than not" preponderance of the evidence standard); *Plessinger v. Berryhill*, No. 18-1240 (7th Cir. Aug. 20, 2018)(ALJ's use of meaningless boilerplate coupled with unsupported credibility evaluation sufficient basis for remand); *Hamilton v. Colvin*, No. 12-3085 (7th Cir. May 3, 2013) ("As we have stressed repeatedly, the passage implies that the ALJ may permissibly settle on an RFC before assessing the claimant's credibility when in fact credibility must be assessed first."); *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) ("Use of boilerplate is not automatically ground for remand . . . but it captures a deeper problem in the ALJ's analysis: the ALJ based her credibility finding on her finding about Stark's ability to work, but a proper assessment requires the reverse.").

In the present case, not only is the decision lacking a balanced discussion of the evidence, it also lacks a logical bridge explaining how the evidence the ALJ chose to discuss led to the conclusion she reached. *Scheck*, 357 F.3d at 700. The ALJ's boilerplate "not entirely consistent" finding is not entirely clear about what symptoms are "reasonably to be expected to cause the alleged symptoms" and which "are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 15). The ALJ lists Plaintiff's "allegations" as "chronic obstructive pulmonary disease (COPD), congestive heart failure and chronic sinusitis and migraines (Exhibit 2E.2). … sleep[ing] for several hours during the day because she has difficulty sleeping at night. … swelling of her feet and hands. … [able to] lift five pounds and sit for 20 minutes at a time."

10

(Tr. 15). However, Plaintiff described symptoms and limitations beyond those summarized by the ALJ that would interfere with her ability to work, and in any event, the ALJ does not analyze the "allegations," she just lists them.

The ALJ also failed to acknowledge many of Plaintiff's most limiting symptoms - such as shortness of breath, dizziness, fatigue, and the inability to keep going or to persevere at a task as her pain and symptoms increased due to the activity. The record is replete with references to headaches (and prescription treatment for headaches), vertigo and dizziness, chest pain with exertion, shortness of breath, and tiredness/fatigue (especially with exertion) (Tr. 51-56, 309, 320, 341, 353, 402, 419, 468, 476, 488-91, 495-98, 501-03, 509-10, 540-45, 550-56, 562-63, 575, 580, 584, 596-600, 632-34, 647-49, 658). The ALJ offered no logical reason for crediting part of what Plaintiff described while disregarding the rest. Comparing the RFC with the ALJ's characterization of Plaintiff's "allegations" shows that the ALJ accepted some of what Plaintiff said, but the decision does not explain why some symptoms were credited while rejecting others. When, as here, the ALJ summarizes but fails to "grapple with much of the evidence in any meaningful way," the required logical bridge is missing. *Amber S. v. Berryhill*, Cause No. 1:17-cv-3966- WTL-MPB (S.D. Ind. Oct. 23, 2018); *Dixon v. Colvin*, Cause No.: 2:12-cv-464-PRC, at *11 (N.D. Ind. Mar. 7, 2014).

While the ALJ never engaged in the required analysis and never explained how the evidence led to the RFC findings or why it did not support specific limitations Plaintiff described, the ALJ did include a single paragraph in which she listed statements purportedly supporting her conclusion that Plaintiff's "allegations are not consistent with the objective evidence before the date last insured" and her conclusion that Plaintiff was "capable of performing work at the

sedentary exertional level" (Tr. 18-19). In this explanatory paragraph, the ALJ states:

- "the claimant's congestive heart failure is managed through the use of medications . . her ejection fraction is now up from 20% to 50%. … [her] heart had longitudinally displayed normal rhythm and rate."
- "the claimant's COPD . . . was managed through the use of inhalers. … [her] lungs were typically clear to auscultation with some infrequent wheezing. X-rays of her chest indicate that her cardiomegaly was at most mild and that her COPD was stable."
- "the claimant's sleep apnea . . . was managed through the use of a CPAP."
- "the claimant's osteoarthritis improved after being started on medication to the point where she only had trace to mild swelling of her lower extremities with some mild tenderness of her knees, feet and shoulder. … [she] was able to walk unassisted [and had] full strength of all muscle groups, . . . full range of motion and sensation of all joints except for some stiffness of her shoulder and knees and that she has full grip and dexterity of her bilateral hands." (Tr. 18-19).

As Plaintiff points out, the paragraph is remarkable for what it lacks which is the logical bridge explaining why the listed facts/factors matter. While it is true the ALJ summarized some of the evidence, that summary does not take the place of the missing analysis. *Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992); *Hearan v. Berryhill*, No. 17 C 0542, 2018 WL 3352657, at *6 (N.D. Ill. July 9, 2018) (a summary of medical evidence with little analysis "prevents the Court from assessing the reasonableness of the ALJ's decision"); *Alevras v. Colvin*, No. 13 C 8409, 2015 WL 2149480, at *4 (N.D. Ill. May 6, 2015) ("[M]erely summarizing medical evidence is not the same thing as analyzing it and explaining how the evidence supports the conclusion that the claimant is not disabled.").

For example, it is true that Plaintiff's ejection fraction improved from the acute low when she was hospitalized in 2013 (Tr. 603). However, the ALJ did not discuss the subsequent ups and downs in her ejection fraction or how/whether ejection fraction correlates with any particular functional ability. However, the record shows that Plaintiff had ongoing difficulty with chest pain

and was treated for CHF throughout the relevant period (Tr. 307-19, 352-55, 488-89, 495-503, 611, 615-18, 621). It is hard to say what the ALJ's point was when she noted Plaintiff's ejection fraction improved and her heart rhythm was normal because she did not explain. If she meant to imply that was evidence showing Plaintiff's heart condition did not cause significant limitations, the ALJ's own expert acknowledged "people with cardiomyopathy with normal ejection fractions will sometimes experience decreased cardiac function as they increase their physical activity" and ejection fraction may change during activity (Tr. 689). The doctor also opined that because of Plaintiff's history, he did not believe she could perform any more than sedentary work (based solely on the medical records and not considering her subjective complaints, as discussed below) (Tr. 689). Because the ALJ ignored evidence contrary to her "finding" and did not explain the import of the evidence she cited regarding Plaintiff's heart condition, her conclusion is meaningless and provides no support for the RFC.

The next "inconsistency" cited by the ALJ suggests Plaintiff's pulmonary condition, or COPD, was controlled with medication. As with the her discussion of CHF, the ALJ picked excerpts of the record that sound benign as support for her finding that Plaintiff's condition was "not that bad," but she did not explain how the benign findings showed anything about Plaintiff's ability to function and she did not confront evidence showing the gravity of Plaintiff's COPD especially in combination with her CHF, OSA, and obesity. The ALJ did not weigh evidence she cited evidence against repeated references in the record to shortness of breath or explore why Plaintiff's doctors continued to prescribe side-effect causing medications if she was better (Tr. 235-38, 293, 309-16, 331, 357, 403-04, 459, 462, 489, 491, 502, 562-71, 577-78, 583, 597). The ALJ did not discuss Plaintiff's doctor's recommendation for a pulmonary consultation due to her

"occupational lung disease" which is further evidence showing the severity of her breathing problems (Tr. 503). Even if the evidence could fairly be characterized as showing improvement in Plaintiff's COPD, as a matter of law, signs of "improvement" may not be parleyed into support for finding a claimant's ability to perform work-related tasks is restored without some analytic connection between the improvement and the supposedly restored functional ability. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("Simply because one is characterized as `stable' or `improving' does not mean that [one] is capable of [] work"); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Clearly, in the present case, the ALJ's bare assertion that Plaintiff "improved" falls well short of showing genuine improvement let alone creating a connection between improvement and restored functioning. *Lambert v. Berryhill*, No. 17-1627, at *13 (7th Cir. Jul. 19, 2018) (ALJ erred in relying on "normal" objective findings where tests showed no hardware malfunction, coordination issues, or strength deficits but physicians did not interpret "normal" medical findings as inconsistent with claimant's reports and continued to treat her pain).

The ALJ committed similar error in stating Plaintiff's sleep apnea was "managed" with use of the CPAP, and the ALJ compounded the error by failing to acknowledge the significant difficulties Plaintiff experienced with the CPAP which caused continued disruption of her nocturnal oxygenation. (Tr. 52-53). For example, Plaintiff's doctor noted the CPAP caused "severe sore throat, which affects her compliance" and coughing also made using it difficult (Tr. 500-01, 575). The same error is evident in the ALJ's conclusion regarding Plaintiff's arthritis. Her citation to "mild" findings on isolated examinations and the fact Plaintiff can walk without assistance establishes no logical reason for the ALJ's decision to ignore Plaintiff's specific symptoms and limitations in formulating the RFC. *Fuchs v. Astrue*, 873 F.Supp.2d 959, 972

(N.D. Ill., 2012) ("[A] snapshot of any single moment says little about [a claimant's] overall condition.") (citing *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir.2011); *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006)). "This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion.); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Again, the ALJ's unsupported assumptions, based on her own opinions, require remand.

Despite claiming the evidence showed little evidence of disease and/or significant evidence of improvement, the ALJ did not explain why she was not persuaded by Plaintiff's significant treatment history. The record shows Plaintiff was hospitalized for CHF in 2013 and had admissions or ER visits for cardiac and pulmonary distress thereafter (Tr. 312-19, 333, 552-54, 566). She was prescribed Ergocalciferol (prescription Vitamin D), Albuterol, Furosemide (Lasix), Cetirizine, Diclofenac, Acetaminophen-Codeine, Advair Diskus, Flonase, Azelastine, Topiramate, Spiriva, Sumatriptan, Lisinopril, Carvedilol, and Voltaren (Tr. 489, 496, 592, 593, 615, 621). She also underwent injections for pain (Tr. 592, 614, 618, 621, 640). The ALJ's failure to reconcile the evidence of significant, ongoing treatment with her conclusion is error. *See, e.g., Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (claimant unlikely to successfully fool physicians into prescribing powerful medications only to bolster claimant's application for disability insurance benefits).

The ALJ also failed to consider clinical measures used by medical professionals to gauge the level of functional impairment caused by a claimant's medical condition. Plaintiff was administered the Oswestry Low Back Pain Disability Index, and her responses placed her at the upper end of the "moderate disability" (21%-40%) category (Tr. 527). The test form describes a moderate disability as one which causes "more pain and problems with sitting and standing. Travel and social life are more difficult … Patients may be off work. Personal care, sleeping and sexual activity may not be grossly affected." (Tr. 527). In her responses, Plaintiff reported difficulty sleeping due to pain and worsening pain with prolonged activities including sitting (Tr. 527-30). Notably, the form relates only to symptoms caused by low back pain (Tr. 530). It was improper for the ALJ to ignore this evidence and instead "select only that evidence which supports her conclusion. . . . the evidence supporting the decision must still be substantial when all the evidence is weighed." *McGee v. Bowen*, 647 F. Supp. 1238, 1246 (N.D. Ill. 1986) (citing *Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984)).

The ALJ also overlooked the significance of Plaintiff's high BMI and in doing so violated SSA's policy. *See* SSR 19-2p. Plaintiff had a BMI around 45, which is in a range known to aggravate arthritic problems and enhance the limitations caused by pulmonary and cardiac disease (Tr. 409, 454-55, 490, 534-36, 538, 542, 593, 615, 621, 628, 636, 646). SSR 19-2p. Her doctors commented that her weight was a concern (Tr. 491, 536, 538, 578, 583, 593, 604, 615). In fact, she was referred to a medically managed weight reduction program (Tr. 615). SSA policy requires adjudicators to consider "the limiting effects of obesity when assessing a person's RFC" and explain how the evidence supports the conclusion reached. SSR 19-2p (replacing SSR 02-1p). Similar to the symptoms and limitations described by Plaintiff, SSR 19-2p explains that obesity

can exacerbate limitations in sitting, standing, walking, lifting, kneeling, and crouching. It also describes increased stress on weight-bearing joints (SSR 19-2p), which is consistent with Plaintiff's complaints of increased joint pain. Also consistent with Plaintiff's description of her difficulties, the SSR states that obesity can have a detrimental effect on a person's ability "to sustain a function over time . . . [and] may affect the person's physical and mental ability to sustain work activity." Finally, as in Plaintiff's case, the ruling advises that the "combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" and specifically cites obesity and arthritis as potentially causing more pain and functional limitations than arthritis alone. SSR 19-2p.

In the present case, Plaintiff's CHF, OSA, COPD, and arthritis were undoubtedly exacerbated by her high BMI. The ALJ committed reversible error when she did not mention Plaintiff's BMI and referred to her weight only in passing. In failing to consider the record as a whole, the ALJ also failed to consider the combined and confounding effects of Plaintiff's multiple impairments. As discussed above, the combined effects of a high BMI and Plaintiff's other impairments is known to cause significant functional limitations. SSR 19-2p. Her migraine headaches were also well-documented and caused symptoms such as photophobia and dizziness (Tr. 550-56, 476, 596, 600, 491, 503, 575, 580, 632, 634, 658). Symptoms caused by Plaintiff's headaches are known to cause difficulty sustaining attention and concentration. *See* SSR 19-4p. Together, the symptoms caused by Plaintiff's multiple medical conditions support her contention that she cannot tolerate the day-in, day-out demands of employment on a consistent basis.

Plaintiff argues that the ALJ erred in evaluating the opinion evidence. Specifically, Plaintiff contends that the ALJ failed to engage in a legally sufficient analysis or offer legally or

logically sufficient reasons for giving little weight to the findings from the Physical Work Performance Evaluation and resulting opinions offered by the physical therapist administering the evaluation (Tr. 475-86). Unless the ALJ gives controlling weight to a treating source opinion under section 404.1527(c)(2), he or she must consider all of the regulatory factors in weighing the various opinions including opinions from "other" medical sources. 20 C.F.R. § 404.1527(c); SSR 06-3p. The adjudicator must consider, inter alia, the provider's area of expertise, supportability and consistency, and the medical source's understanding of the disability program and the extent to which the medical source is familiar with other information in the record. *Id.* at 404.1527(c). The degree of explanation, the evidence presented in support of the opinion, and its overall consistency with the record are also considered. *Id*. at 404.1527(d); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

> The ALJ's entire assessment of the evaluation and opinion is as follows:
>
> As for the other opinion evidence, Jeffrey Sampson, PT, the claimant's physical therapist, conducted a Physical Work Performance Evaluation on June 7, 2016. Based upon the study, Mr. Sampson opined that while the claimant is capable of performing physical work at the sedentary level, she is likely incapable of sustaining work for an eight hour workday in part due to vertigo and chest pain (Exhibit 18F/l, 2). While the record supports a finding that the claimant is able to perform work at the sedentary exertional level, it also indicates that the claimant's vertigo and chest pain were infrequent in nature. Notes from mental status examinations indicate that the claimant was longitudinally been alert and fully oriented, with no signs of thought disorder. There is no evidence that the claimant's vertigo or chest pain prevented her from working full time. (Tr. 20).

Notably, the ALJ categorized all of the information from the evaluation as the physical therapist's opinion, but she did not actually state what weight she attributed to the therapist's opinion (Tr. 20).

The ALJ erred when she summarily characterized the physical therapist's first-hand observations of Plaintiff's functioning and the results of medically acceptable clinical tests as opinion evidence. "[M]edical opinions are statements . . . that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p; 20 C.F.R. § 404.1527(a)(2). In contrast, "objective medical evidence" includes "signs, laboratory findings, or both," and "signs" are "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). . . shown by medically acceptable clinical diagnostic techniques." *Id*. at 404.1502. Unlike a questionnaire completed by a doctor, the Physical Work Performance Evaluation included both opinion and objective evidence. The ALJ did not inquire about the reliability of the test or the objectivity of its measures, and instead, assumed the findings were mere conjecture. The test results show the evaluation contained validity measures and included observable phenomena indicative of Plaintiff's ability to function (Tr. 476-86). For each task, the PT described what he observed as well as what Plaintiff reported, and he offered an opinion about whether the two were consistent or caused concerns about self-limiting behavior. The ALJ did not consider the direct evidence showing Plaintiff had difficulty with multiple tasks required for sedentary work or explain why the observations and clinical findings of the PT were unreliable. This omission was error.

To the extent the ALJ attempted to discount the PT's opinion, she failed to articulate how much weight she believed the opinion carried, made factually misleading misstatements, and offered legally insufficient justifications for omitting limitations found in the assessment from the

RFC formulation. For example, the ALJ stated that the PT's opinion that Plaintiff was "likely incapable of sustaining work for an eight hour workday" was "in part due to vertigo and chest pain" but the only contrast she offered to dispute the PT's opinion was that the record "indicates that the claimant's vertigo and chest pain were infrequent in nature" and "[n]otes from mental status examinations indicate that the claimant was longitudinally alert and fully oriented, with no signs of thought disorder" (Tr. 20). From these two statements, the ALJ then concluded, "There is no evidence that the claimant's vertigo or chest pain prevened [sic] her from working full time" (Tr. 20) which suggests the PT's opinion was only that Plaintiff could not work full time due to vertigo and chest pain alone. As the ALJ initially stated, vertigo and chest pain were only part of the factors underlying the Plaintiff's limitations, and other factors included lower back, knee, and ankle pain that worsened over the course of testing and difficulties bending in a controlled manner and returning to standing after being bent; and increased heart rate with pushing and pulling tasks (Tr. 476).

Chest pain was not mentioned by the therapist as a limiting fact; rather, Plaintiff's difficulty was described as "increased cardiac response". Also, contrary to the ALJ's assertion, the record contains ample evidence of both vertigo and chest pain from throughout the time period subject to adjudication (Tr. 190, 309-16, 320, 331, 335, 341, 397, 476, 468, 489, 491, 502, 540-45, 550-56, 562-71, 577, 579, 583, 597, 632, 658). It is unclear why the ALJ found mentions of Plaintiff's mental status important, but even in more appropriate cases an ALJ's reliance on "mostly unremarkable mental status evaluations" is erroneous. *See Neyhart v. Comm'r of Soc. Sec.*, CASE NO. 3:17-CV- 00437-MGG, at *11 (N.D. Ind. Sep. 28, 2018) ("If a person is "alert and oriented," does that mean they cannot be simultaneously fatigued?"). Thus, her justifications

are insufficient to support her decision to exclude the therapist's opinion from the RFC formulation.

Further, the ALJ erred in applying the "no credibility without corroboration" standard. *See Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014). As when an ALJ considers opinions from treating sources and refuses to afford appropriate weight absent corroborating evidence, it was error for the ALJ to think "evidence can be disregarded unless [s]he has detailed notes to back it up and other physicians provide identical evidence even if they don't contradict him." Like a doctor, the physical therapist is a qualified professional, and the ALJ erred when she relied on legally "insufficient grounds for disbelieving the evidence of a qualified professional." *Id.* The physical therapist's credentials are in the record but were not mentioned in the ALJ's decision (Tr. 482-83).

The ALJ also failed to properly consider the opinion of the medical expert whose opinion she found persuasive. As explained above, the medical expert considered only the medical evidence and offered an opinion that did not take Plaintiff's symptoms and limitations into account. Even without consideration of Plaintiff's description of the unique effects her diagnoses had upon her ability to function, the doctor believed she was limited to sedentary work (Tr. 689). Thus, he believed, based on the objective medical evidence alone, Plaintiff was limited to sedentary work. The regulations and SSA policy are clear in stating that the disability inquiry does not end with the objective medical evidence and adjudicators must consider the subjective effects of illness and disease. Here, the ALJ committed legal error by giving undue weight to the doctor's conclusion which did not account for Plaintiff's subjective symptoms and limitations, and, in effect, adopting the opinion as her administrative finding.

The ALJ also undervalued the insight offered by the doctor's opinion. The expert's narrative shows that he believed the objective evidence alone was significant enough to believe Plaintiff would be limited to sedentary work and she would deteriorate with activity. His opinion is entirely consistent with Plaintiff's description of what happens to her when she tries to perform tasks for an extended period and her explanation of why she cannot work. It is also consistent with the PT's observations of Plaintiff's abilities over the course of the 2.5 hour evaluation. The opinion is persuasive evidence supporting other evidence in the record showing Plaintiff cannot sustain work activity, and the ALJ's failure to understand the value of the opinion and use it appropriately in formulating the RFC is reversible error. *Eddins v. Colvin*, No. 15 C 8372, at *14 (N.D. Ill. Nov. 16, 2016) (error where opinion ALJ found "supported by the weight of the record" not accounted for in the RFC "without even acknowledging the discrepancy"). Thus, remand is required.

Next, Plaintiff argues that the vocational findings are founded upon legal error and not supported by substantial evidence. The Commissioner uses a five-step evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(iv). *Scheck*, 357 F.3d at 699-700. Steps four and five are the "vocational" steps where the ALJ must consider the medical and vocational factors to determine whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1520(a)(4)(i)-(iv). If a finding of disability is not made on medical factors alone, after step three, the ALJ assesses the claimant's residual functional capacity ("RFC") for use at the fourth and fifth steps. At step five, the Commissioner must produce reliable evidence of a significant number of jobs existing in the national economy for a person matching the claimant's vocational profile to support a finding that the claimant is not disabled. *Zurawski v. Halter*, 245

F.3d 881, 886 (7th Cir. 2001). Because the step four and step five determinations depend on the RFC, the validity of a vocational denial hinges on the validity of the RFC determination. *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004).

In the present case, the Commissioner attempted to satisfy his step-five burden via testimony from a vocational witness, but the vocational testimony is not reliable because it is premised on a hypothetical question that does not reflect a legally sufficient and factually supported RFC (Tr. 59-64). *See id.* (a decision made at step five hinges on the validity of the RFC determination). At the administrative hearing, the ALJ asked the vocational expert a series of hypothetical questions, premised on Plaintiff's vocational and educational history, with increasingly restrictive functional limitations (Tr. 59-64). In the decision, the ALJ tailored the RFC finding to include a litany of restrictions mirroring those in the series of questions posed to the witness (in questions resulting in responses identifying jobs- not those precluding work), and she determined that Plaintiff could, in fact, perform the jobs identified by the witness (Tr. 14, 21, 60-62). However, the RFC and hypothetical are deficient because the ALJ failed to identify all of Plaintiff's medically determinable impairments at Step Two and failed to incorporate limitations in the RFC to account for all of the limitations supported by a preponderance of the evidence including her inability to sustain the rigors of full time employment.

The ALJ's failure to analyze the impact of all of Plaintiff's potentially disabling impairments – particularly the combined effects of her multiple impairments - resulted in the omission of significant limitations from the RFC. When determining an individual's RFC, the ALJ must consider the combined effects of all limitations that arise from medically determinable impairments based on the record as a whole, even those that would not be considered severe in

23

isolation. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014); *Terry*, 580 F.3d at 477; *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir.2008); 20 C.F.R. § 404.1523. In the decision, the ALJ admitted she considered only limitations attributable to Plaintiff's "history of congestive heart failure, COPD, osteoarthritis and sleep apnea" – impairments the ALJ found severe at step two - in evaluating the RFC (Tr. 20). The ALJ's statement suggests the RFC does not reflect the confounding impact of the "nonsevere" migraines and chronic sinusitis which, at step two, the ALJ acknowledged were medically determinable (although she did not find them severe) (Tr. 13). As discussed above, the ALJ wholly failed to consider the confounding effects of obesity on Plaintiff's orthopedic, cardiac, and pulmonary impairments, and the RFC statement reinforces that she did not consider the effect of obesity on Plaintiff's functioning. *See* SSR 19-2p (replacing SSR 02-1p). Because the vocational evidence was given in response to a hypothetical question based on an RFC reflecting only part of the evidence, the vocational evidence is not sufficient to satisfy the Commissioner's burden at step five to demonstrate jobs exist Plaintiff could perform despite her disability.

Further, the ALJ's RFC finding reflects impermissible picking and choosing in her evaluation of the evidence which further detracts from the reliability of any evidence based on the RFC finding (*i.e.*, the vocational testimony). For example, the ALJ included some provisions in the RFC to address the sitting and standing limitations Plaintiff described, but the decision falls short of explaining or giving a logical reason for deciding Plaintiff "needed to alternate between sitting and standing for 10 minutes every hour while remaining on task and at the workstation" while omitting any provision for elevating her legs although she described reclining and elevating her legs as a requirement to remaining in a seated position for any period of time (Tr. 56). The

only obvious reason for excluding the need to recline and elevate her legs is found in the vocational expert's testimony suggesting that employers would not tolerate a person reclining and elevating her legs while at work (Tr. 62). Thus, if the ALJ included the limitation, no jobs would exist that Plaintiff could perform; without the limitation, the ALJ was able to identify jobs. However, the ALJ may not choose to omit a limitation "which can reasonably be accepted as consistent with the objective medical evidence and other evidence" simply because it runs contrary to the disability decision she has decided is otherwise correct. 20 C.F.R. § 404.1529(c)(3). If a limitation meets the regulatory standards, it must be included in the RFC and the ALJ must make her decision accordingly. Here, the evidence shows Plaintiff has pain and swelling that is aggravated by prolonged sitting and relieved by reclining and elevating her legs (Tr. 50-56, 321, 332, 403, 407, 488, 490, 500, 503, 562, 564, 581, 628, 636, 646). The need to elevate her legs and recline while seated is reasonably consistent with the record as a whole, and the ALJ did not specifically say it was not. The ALJ's failure to explain why she accepted some of Plaintiff's description while rejecting only the work-preclusive parts was error. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("The ALJ must evaluate the record fairly" and build an "accurate and logical bridge" from the evidence to his conclusion.).

The ALJ did not consider Plaintiff's inability to keep going for eight hours per day, five days per week for a 40-hour workweek. The POMS instructs ALJs to be mindful of limitations that cannot be adequately described using the typical "exertional" and "nonexertional" terms used in the RFC finding. *See* POMS DI 24510.057, Sustainability and the Residual Functional Capacity (RFC) Assessment ("REMINDER: Inability to sustain a 40-hour workweek is an RFC finding."). While the RFC and hypothetical questions may reflect functions Plaintiff could

perform on an infrequent basis, the evidence in the record shows that she could not sustain those activities for forty hours per week. Even SSA's own expert believed her CHF would cause increasing symptoms as she tried to sustain activity, and the functional evaluation showed how quickly her symptoms escalated and limited her ability to function. Sitting all day is not an option for Plaintiff because of her problems with swelling and pain, and the ALJ did not even ask about problems with sleepiness and focus caused by her lack of sleep. The ALJ did not address the confounding effect of multiple impairments or sustainability, and her omissions are reversible error. Accordingly, remand is warranted.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

Entered: March 23 , 2020.

s/ William C.  Lee
William C. Lee, Judge
United States District Court